UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | § | |
| RICHARD DRUMMOND and | § | |
| | § | Civil Action No. H-08-2441 |
| STATE OF TEXAS *ex rel.* | § | |
| RICHARD DRUMMOND, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| BESTCARE LABORATORY SERVICES LLC, | § | |
| formerly known as BESTCARE LABORATORY | § | |
| SERVICES, INC., and KARIM A. MAGHAREH, | § | |
| | § | |
| *Defendants*. | § | |

## UNITED STATES' COMPLAINT IN INTERVENTION

The United States of America files this Complaint in Intervention pursuant to 31 U.S.C.

§ 3730(b)(4)(A), and states as follows:

## INTRODUCTION

1.      Defendant BestCare Laboratory Services LLC (formerly known as BestCare

Laboratories, Inc.) ("BestCare") is a laboratory business headquartered in Webster, Texas.

BestCare specializes in serving nursing homes by sending trained technicians to collect blood

samples and other specimens from nursing home residents, for testing by BestCare at its labs.

BestCare was founded in 2002 by defendant Karim A. Maghareh ("Maghareh"), who serves as

its President and Chief Executive Officer.  Maghareh and his wife are the co-owners of

BestCare.

2.      The majority of BestCare's revenues are derived from the federal Medicare

program.  From at least 2004 through at least 2009, BestCare received more than $24 million

from claims to Medicare for mileage-based compensation for purported technician travel. Indeed, during that time, BestCare's technician travel compensation constituted approximately seventy percent of its Medicare revenues.  The vast majority of the claimed technician travel did not, however, actually occur, and the mileage claimed was not reasonable.  The vast majority of BestCare's technician travel allowance claims were false or fraudulent.  Maghareh knowingly caused the submission of such claims and BestCare received payments to which it was not entitled, at the expense of Medicare and its beneficiaries, and the United States and its taxpayers.

3.      By this action, the United States seeks to recover treble damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, and damages under the common law theories of fraud, payment by mistake and unjust enrichment, resulting from defendants' wrongful conduct as described further herein.

## PARTIES

4.      The United States brings this action on its own behalf and on behalf of the United States Department of Health and Human Services ("HHS") and HHS' component agency, the Centers for Medicare and Medicaid Services ("CMS").  CMS administers the Medicare program, which was created in 1965 as part of the Social Security Act, 42 U.S.C. § 1395 *et seq*., to provide federally-funded health insurance for persons age 65 and older, persons under age 65 with certain disabilities, and persons of all ages with end-stage renal disease.

5.      Relator Richard Drummond is a citizen of the United States and a resident of the State of Texas.  Relator originally filed this action on behalf of the United States pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b)(1).

6.      Defendant BestCare is a Texas business entity headquartered in Webster, Texas.

Formed originally as a corporation, BestCare later converted to a limited liability company.

7.      Defendant Maghareh is a citizen of the United States and a resident of the State of Texas.  At all times relevant to this complaint, Maghareh has been a co-owner (with his wife), and the President, and Chief Executive Officer of BestCare, responsible for its overall and day-to-day operations.  Maghareh's wife is also an employee of BestCare.

8.      Over time, BestCare expanded its client base beyond Houston area nursing homes, to serve nursing homes in and around Austin, Dallas, El Paso, San Antonio, and Waco, Texas.  BestCare had so much business in Dallas and San Antonio that it opened satellite labs in those cities, capable of doing simple lab tests.  BestCare also contracted with third party laboratories to perform certain time-sensitive, or STAT, tests needed by local clients in these areas.

9.      BestCare performed non-STAT tests that were too complex to be done in the Dallas or San Antonio labs in its Webster lab.  To perform such tests on patient specimens obtained from nursing homes in the Austin, Dallas, El Paso, San Antonio, and Waco areas, BestCare shipped the specimens to Houston (for delivery to Webster) on Southwest Airlines, unaccompanied by the BestCare technicians who obtained the specimens.

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, because this action is brought by the United States pursuant to the FCA.

11.     The Court has personal jurisdiction over defendants in this action pursuant to 31 U.S.C. § 3732(a), because defendants reside and transact business within this District.

12.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C.

§ 1391(b) and (c).

## LEGAL BACKGROUND

**A.    The False Claims Act**

13.    The FCA prohibits knowingly presenting, or causing to be presented, to the Federal Government a false or fraudulent claim for payment or approval.  31 U.S.C. § 3729(a)(1) (1986), and 31 U.S.C. § 3729(a)(1)(A) (2009).[1]  In addition, the FCA prohibits knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim.  31 U.S.C. § 3729(a)(1)(B).  The FCA further prohibits knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money back to the Federal Government.  31 U.S.C. § 3729(a)(1)(G).

14.    The term "knowingly" under the FCA means that a person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information.  31 U.S.C. § 3729(b).  No proof of specific intent to defraud is required to show that a person acted knowingly under the FCA.  *Id.*

15.    FCA violations subject defendants to civil penalties of not less than $5,500 and not more than $11,000 per false claim, plus liability for three times the amount of damages sustained by the United States.  31 U.S.C. § 3729(a).

---

[1] Congress amended the FCA as a part of the Fraud Enforcement Recovery Act of 2009 on May 20, 2009, making certain amendments retroactive, including 31 U.S.C. § 3729(a)(1)(B). Congress amended the FCA again as part of the Patient Protection and Affordable Care Act on March 23, 2010.

-4-

**B.      Medicare Travel Allowance Fees for Technician Travel**

16.      Medicare pays labs certain fees for sending trained technicians to draw specimens from homebound or nursing home patients, and to return the specimens back to the lab for testing.  For this service, Medicare pays not only a specimen collection fee, approximately $3 at all times relevant to this complaint, but also a mileage-based fee for the technician's travel ("travel allowance fee"), approximately $1 per mile at all times relevant to this complaint.

17.      Medicare pays a technician travel allowance fee only when the lab also claims a specimen collection fee.  That is, no payment is allowed when a technician, or any other lab personnel, merely performs a pickup or delivery service for specimens drawn by non-lab personnel.

18.      The Medicare per-mile technician travel allowance fee is computed by adding the federal automobile mileage rate to an amount set by CMS as estimated compensation for the technician's time and other travel costs.  Local Medicare contractors may, depending upon local conditions, set a higher per-mile rate than the rate set by CMS.

19.      Medicare provider labs submit claims for payment using Current Procedural Terminology (CPT) codes for the services provided.  CPT codes are published annually in the American Medical Association's Healthcare Common Procedure Coding System Manual.

20.      From 2005 through 2009, BestCare submitted over $24 million of claims for technician travel allowance fees under CPT code P9603.  At all times relevant to this complaint, P9603 described the service for which technician travel was reimbursable as follows:  "Travel allowance one way in connection with medically necessary laboratory specimen collection

drawn from homebound or nursing home bound patient; prorated miles actually travelled."

21.     In addition, the rules for labs to claim technician travel allowance fees from Medicare are set forth in the publicly available Medicare Claims Processing Manual, Chapter 16 (Laboratory Services), Section 60.2 (Travel Allowance), and in materials provided by CMS local contractors to Medicare lab providers upon their enrollment in the program.  Further, from time-to-time, and generally when the per-mile technician travel allowance fee is adjusted (*e.g.*, when the federal automobile mileage component of the fee has been changed), CMS and its contractors reiterate the rules for claiming such fees.

22.     At all time relevant to this complaint, the Medicare rules stated that labs may not claim technician travel allowance fees unless a technician has actually traveled the miles claimed, and unless the mileage claimed is reasonable.  As stated in the Medicare Claims Processing Manual:  "At no time will the laboratory be allowed to bill for more miles than are reasonable or for miles not actually traveled by the laboratory technician."

23.     Medicare rules also require that travel mileage claimed for technician travel allowance fees must be prorated by the number of patients serviced in a single trip.  That is, the total miles that the lab technician traveled must be divided by the number of patients, Medicare and non-Medicare, from whom the technician obtained specimens, with the resulting, prorated number of miles assigned to each patient for whom a technician travel allowance fee is claimed. The Medicare Claims Processing Manual gives the following example (using the 2008 mileage rate of $1.035 per mile):

> In CY 2008, a laboratory technician travels 40 miles from the lab to a Medicare patient's home to draw blood, and then travels an additional 10 miles to a non-Medicare patient's home and then travels 30 miles to return to the lab.  The total miles traveled would be 80 miles.  The claim submitted would be for one half of

the miles traveled or $41.40 (40 x 1.035), plus the specimen collection fee.

## FACTS

### A.      Defendants' False Claims for Technician Travel Allowance Fees

24.      From at least 2004 through at least 2009, BestCare knowingly presented, and Maghareh knowingly caused BestCare to present, false claims for Medicare technician travel allowance fees, in particular, for mileage that no technician actually traveled, for mileage that was not prorated, and for mileage that was not reasonable.

25.      BestCare did not send technicians from in or around its Webster laboratory to obtain specimens from nursing home patients in the Austin, Dallas, El Paso, San Antonio and Waco areas.  Rather, BestCare hired technicians in those cities to collect the specimens.   If the testing could not be accomplished in BestCare's satellite labs in Dallas or San Antonio, or specimens were not sent to a third-party local lab for time-sensitive testing, the specimens would be shipped to Houston via Southwest Airlines, and delivered for testing to BestCare's Webster lab.  No technician accompanied the specimens during air shipment.  Nevertheless, BestCare claimed technician travel allowance fees from Medicare as if technicians had actually traveled from the Webster area to these distant cities to collect specimens.  Sometimes BestCare billed for a hypothetical one-way technician trip and other times it billed for a round-trip.  Sometimes BestCare prorated such hypothetical travel mileage from Webster to the distant locations by the number of patients serviced, and sometimes it did not.  In any event, BestCare claimed technician travel allowance fees from Medicare, using one-way or round-trip driving mileage between Webster, on the one hand, and Austin, Dallas, El Paso, San Antonio, or Waco, on the other hand, when no technician actually traveled one-way or round-trip from Webster to a

nursing home in any of those cities to collect and return patient specimens.

26.     For example, according to BestCare's business records, on April 2, 2008, an El Paso-based technician named Mary McBryde obtained specimens from patients in two nursing homes in El Paso:  (a) from two patients in El Paso Health and Rehab and (b) from four patients in Good Samaritan White Acres ("Good Samaritan").  BestCare claimed travel allowance fees for 758 miles of technician travel, representing the driving distance between Webster and El Paso Health and Rehab, for each of the two patients at that facility, for a total of 1,516 miles. Ms. McBryde saw one patient at 3:30 a.m. and the other at 3:35 a.m.; she did not make trips between Webster and El Paso to service these patients.  BestCare also claimed travel allowance fees for 1,558 miles of technician travel, the round-trip distance between Webster and Good Samaritan, for one of the patients seen at that facility by Ms. McBryde at 2:05 a.m., while also claiming 311 miles of travel by Ms. McBryde for each of the three other patients seen at 2:10 a.m., 2:15 a.m., and 2:25 a.m., respectively, for a total of 933 miles.  As a result, BestCare claimed technician travel allowance fees from Medicare for over 4,000 miles of purported technician travel that day.  These claims were false or fraudulent.  No such travel actually occurred.  The mileage claimed was unreasonable.

27.     BestCare also claimed Medicare technician travel allowance fees in connection with Houston area travel by its Webster-based technicians.  When these technicians visited several nursing homes in a single, continuous route, and returned specimens to BestCare's Webster lab at their route's end, BestCare claimed technician travel allowance fees by adding the hypothetical round-trip driving distances between each nursing home and the BestCare lab, often for each patient serviced by the technician, as if the technician had made multiple trips back and

forth for each patient, which did not occur.

28.     For example: On July 19, 2007, BestCare technician Antoinette Young visited four Houston area nursing homes, including Heartland Healthcare Center Willowbrook ("Heartland").  Attached as Exhibit A is Ms. Young's mileage log for July 19, 2007.  Ms. Young took specimens from five Medicare patients at Heartland.   BestCare claimed 94 miles in technician travel allowance fees for each patient, for a total of 470 miles.  Ms. Young next traveled to service patients at Cypresswood.  BestCare claimed a technician travel allowance fee for 96 miles for a patient from whom Ms. Young took a specimen at that facility.  The next stop on Ms. Young's route was Lawrence Street Healthcare.  BestCare submitted a claim for 110 miles for Ms. Young's service to the patient at that facility.  In fact, Ms. Young reported on her log that she traveled only 69 miles to all four nursing homes on her route that day.  Nevertheless, BestCare claimed technician travel allowance fees for 676 miles of purported travel by Ms. Young for her route.  These claims were false or fraudulent.  No such travel actually occurred. The mileage traveled was not prorated.  The mileage claimed was unreasonable.

29.     Maghareh was aware of, directed, authorized, or permitted such travel allowance fee claims to Medicare, with actual knowledge, reckless disregard or deliberate ignorance of BestCare's ineligibility to receive payment for such claims pursuant to P9603 and the applicable Medicare rules.  Indeed, Maghareh instructed his staff to claim Medicare travel allowance fees for hypothetical technician travel mileage for tests done in the Dallas and San Antonio satellite labs, or third-party contract labs outside of Webster, as if the specimens had been returned by technicians for testing in BestCare's Webster lab.  Such claims were false.  No such travel actually occurred.  The mileage claimed was unreasonable.

30.     For further examples of BestCare's false or fraudulent claims, see Exhibit B.  The claims in Exhibit B represent travel allowance fee claims by BestCare under P9603 for mileage not actually traveled, or not prorated, or not reasonable.  The patient identities for these claims will be disclosed to defendants pursuant to an appropriate confidentiality agreement or order. These are examples only, and the United States will prove the full extent of defendants' false or fraudulent claims, and resulting damages, at trial.

31.     By knowingly making claims for technician travel allowance fees for miles not actually traveled by a technician, mileage not prorated, and mileage that was not reasonable, BestCare knowingly violated the conditions of payment for such fees, knowingly made false statements material to such claims and to get such claims paid, knowingly submitted false or fraudulent claims to the United States, and knowingly received and retained payments from Medicare to which BestCare was not entitled.  Maghareh knowingly caused such conduct by BestCare.

**B.     Defendants' Additional False Statements Material to Their False Claims**

32.     BestCare submitted claims for technician travel allowance fees to Medicare through a CMS contractor called Trailblazer Health Enterprises ("Trailblazer"), electronically or in paper form, pursuant to Form CMS-1500.

33.     Each Form CMS-1500 submitted electronically or in paper form by BestCare contained the following certifications, signed by or under the authority of Maghareh:

> I certify that the services listed above were medically indicated and necessary to the health of this patient and were personally furnished by me or my employee under my personal direction.

NOTICE: This is to certify that the foregoing information is true and accurate and complete.  I understand that payment and satisfaction of this claim will be from Federal and State funds, and that any false claims, statements, or documents, or concealment of a material fact, may be prosecuted under applicable Federal or State laws.

34.     In order to participate in Medicare, providers must sign a Provider/Supplier Enrollment Application (Application).  In or about November 2001 and October 2003, Maghareh signed such Applications on behalf of BestCare.  The Applications included the following language:  "I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity."  By signing the Applications, Maghareh agreed and represented that he and BestCare and its employees would become knowledgeable of and abide by applicable Medicare laws, regulations and program instructions.  Maghareh made such agreement and representation without the intention to abide by the same.

35.     Maghareh knew that Medicare required BestCare's claims to be true, accurate and complete; not to conceal any material fact; and to be made in accordance with applicable CPT codes and Medicare rules.  Maghareh and BestCare submitted or caused to be submitted claims for technician travel allowance fees to Medicare with knowledge of, reckless disregard for, or deliberate indifference as to the falsity of such claims.

36.     BestCare's agreements, certifications and representations as set forth above, made by or under the authority of Maghareh, in connection with claims for technician travel allowance fees for technician travel that did not actually occur, that was not prorated, or that was not reasonable, were made in order get such claims paid, were material to such claims, and were knowingly false or fraudulent.

-11-

### C.     United States' Damages and Defendants' Unjust Gains

37.     Medicare paid BestCare more than $24 million on claims for technician travel allowance fees billed under CPT code P9603, for the years 2004 to 2009.   With respect to the majority of these claims, BestCare's technicians did not actually travel the mileage for which BestCare made such claims; such mileage was not prorated; and the mileage was not reasonable.  BestCare was not entitled to payment from Medicare for such claims.  The United States has been damaged in the amount of such claims and such additional false claims as BestCare made before 2004 and after 2009, in a total amount to be proven at trial.

38.     Maghareh withdrew substantial amounts from BestCare in the form of salaries and distributions to himself and his wife, and used BestCare's assets and profits for his and his wife's personal benefit, which sums were derived, in whole or in part, from Medicare payments to BestCare resulting from defendants' unlawful, unjust, false or fraudulent conduct set forth above.  BestCare and Maghareh, in equity and good conscience, should not be permitted to retain such sums.

## <u>COUNT I</u>

### 31 U.S.C. § 3729(a)(1) (claims through May 19, 2009)<br>and 31 U.S.C. § 3729(a)(1)(A) (claims from May 20, 2009)

39.     The United States restates and incorporates by reference paragraphs 1 through 38 of the complaint as if fully set forth herein.

40.     Defendants knowingly presented, or caused to be presented to the United States false or fraudulent claims for payment or approval, for technician travel that did not actually occur, was not prorated, or was not reasonable.

41.     By virtue of the false or fraudulent claims made by the defendants, the United States suffered damages.

42.     Defendants are jointly and severally liable to the United States under the False Claims Act for treble damages, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation.

<u>**COUNT II**</u><br><u>**31 U.S.C. § 3729(a)(1)(B)**</u>

43.     The United States restates and incorporates by reference paragraphs 1 through 42 of the complaint as if fully set forth herein.

44.     Defendants knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the United States, and knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to the United States.  Such materially false records and statements include, but are not limited to, agreements, representations and certifications made in BestCare's Medicare enrollment Application and claims for technician travel allowance fees.

45.     By virtue of the false or fraudulent records and statements made, used, and caused to be made and used by defendants, the United States suffered damages.

46.     Defendants are jointly and severally liable to the United States under the False Claims Act for treble damages, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation.

<u>**COUNT III**</u>

-13-

**31 U.S.C. § 3729(a)(1)(G)**

47.     The United States restates and incorporates by reference paragraphs 1 through 46 of the Complaint as if fully set forth herein.

48.     From May 20, 2009 to the present, Defendants knowingly concealed or knowingly and improperly avoided an obligation to pay or transmit money to the United States by failing to repay amounts received from Medicare for technician travel fees to which they were not entitled.  Defendants knew that they were not entitled to such money but concealed and avoided their obligation to repay such amounts to Medicare.

49.     Defendants' knowing concealment and avoidance of BestCare's obligation to repay money to the United States caused damages to the United States.

50.     Defendants are jointly and severally liable to the United States under the False Claims Act for treble damages, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation.

**COUNT IV**
**Common Law Fraud**

51.     The United States restates and incorporates by reference paragraphs 1 through 50 of the Complaint as if fully set forth herein.

52.     Defendants knowingly presented, or caused to be presented fraudulent claims for payment to the United States for technician travel allowance fees.  Defendants represented that the claims were true and correct and that the services identified in the claim were actually provided, were reasonable, and were claimed in compliance with applicable laws and regulations, and should be paid by the United States.

53.     Knowing that claims were materially false and did not comply with applicable

laws and regulations, and that they were not entitled to payment, defendants submitted such claims with the intent to deceive and induce the United States into paying them to BestCare.

54.     The United States relied on the claims and representations made by defendants and took action in reliance upon the same, including payment of claims to defendants to which defendants were not entitled.

55.     As a result, the United States is entitled to compensatory damages consisting of the total amount paid by he United States for the fraudulent claims, plus interest, and other compensatory and punitive damages to be determined at trial.

**COUNT V**
**Payment by Mistake**

56.     The United States restates and incorporates by reference paragraphs 1 through 55 of the Complaint as if fully set forth herein.

57.     Defendants presented or caused to be presented claims to the United States that were paid to BestCare, and distributed in whole or in part to Maghareh, based upon the United States' mistaken or erroneous understandings of material fact concerning the true nature of such claims.

58.     The United States is entitled to recover of the money paid to BestCare, and distributed to Maghareh, as a result of such mistaken understandings of fact.

**COUNT VI**
**Unjust Enrichment**

59.     The United States restates and incorporates by reference paragraphs 1 through 58 of the Complaint as if fully set forth herein.

60.     Defendants claimed, received and retained the benefit of federal money paid

-15-

from the Medicare program, intended as reimbursement for actual technician travel mileage, where such travel did not actually occur, the mileage was not prorated, and the mileage claimed was not reasonable.

61.     Defendants have been unjustly enriched with money of the United States, which they should not in equity and good conscience be permitted to retain.

## RELIEF REQUESTED

WHEREFORE, the United States of America requests that judgment be entered in its favor and against defendants, jointly and severally, as follows:

A.     On Counts I, II and III under the FCA, for the amount of the United States' damages to be determined at trial, trebled as required by law, and such civil penalties as are required by law, and such further relief as may be just and proper.

B.     On Count IV for common law fraud, for compensatory and punitive damages in an amount to be determined at trial, and such further and other relief as may be just and proper.

C.     On Count V for payment by mistake, for money that the United States mistakenly paid defendants in an amount to be determined at trial, and such further relief as may be just and proper.

D.     On Count VI for unjust enrichment, for money received from the United States by defendants, directly or indirectly, which in equity and good conscience they should not be permitted to retain, in an amount to be determined at trial, and such further and other relief as may be just and proper.

E.     With respect to each Count of the Complaint, for interest, costs, expenses and

attorney's fees as allowed by law, and such further and other relief as the Court may deem just, necessary and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the United States demands a trial by jury of all issues so triable.

Respectfully submitted,

TONY WEST
Assistant Attorney General

KENNETH MAGIDSON
United States Attorney

By:   <u>s/ Michelle Zingaro</u>
MICHELLE ZINGARO
Assistant United States Attorney
State Bar No. 12345500
Fed. Bar No. 14463
919 Milam, Suite 1500
P.O. Box 61129
Houston, TX  77208
Telephone:  (713) 567-9512
Facsimile:  (713) 718-3303

JOYCE R. BRANDA
JUDITH RABINOWITZ
RICHARD S. NICHOLSON
Attorneys
Civil Division
Commercial Litigation Branch
601 D Street, N.W., Room 1209
Washington, DC 20004
Telephone:  (202) 616-0345

Dated: November 21, 2011

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of November 2011, I served a copy of the foregoing United States' Complaint in Intervention electronically, by agreement of counsel for defendants, upon:

Mark S. Armstrong, Esq.
EpsteinBeckerGreen
Two Houston Center
909 Fannin, Suite 3838
Houston, TX 77010
Counsel for Defendant BestCare Laboratories, Inc.

William F. Gould, Esq.
Holland & Knight
1600 Tysons Boulevard, Suite 700
McLean VA 22102
(703) 720-8019
Counsel for Defendant Karim A. Maghareh

Mitchell R. Kreindler, Esq.
Kreindler & Associates
9219 Katy Freeway, Suite 206
Houston, TX 77024
Counsel for Relator Richard Drummond

s/ Michelle Zingaro
 Michelle Zingaro