UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* RICHARD DRUMMOND and | § § § § | |
| | § | Civil Action No. H-08-2441 |
| STATE OF TEXAS *ex rel.* RICHARD DRUMMOND, | § § § § | |
| *Plaintiffs* | § § | |
| v. | § § | |
| BESTCARE LABORATORY SERVICES LLC, and KARIM A. MAGHAREH, | § § § | |
| *Defendants*. | § § | |

**MOTION OF THE UNITED STATES FOR PARTIAL SUMMARY JUDGMENT
AND SUPPORTING MEMORANDUM**

The United States moves for partial summary judgment on the grounds set forth below.

NATURE AND STAGE OF PROCEEDING

The United States has intervened in this *qui tam* action. In addition to asserting False Claims Act (FCA) claims against the defendants, the United States asserts claims of common law fraud, payment by mistake, and unjust enrichment.

The action centers on the defendants' abuse of Medicare billing code P9603, by which laboratories may claim reimbursement to compensate for the expense, as estimated by the Centers for Medicare and Medicaid Services (CMS) to be approximately $1 per mile, of sending a technician, typically a phlebotomist, to collect specimens from homebound or nursing home-bound patients. From 2002 to 2009, approximately 69% of BestCare's Medicare revenue

1

came from billing under code P9603. That is, of the $34.8 million Medicare paid BestCare for all services billed during that time, approximately $23 million was for "round trip" P9603 claims and approximately $1 million was for "one-way" P9603 claims. Almost half of the P9603 revenue, or approximately $11.5 million, was paid for claims by BestCare under P9603 seeking reimbursement for 400 miles or more of purported technician travel.

BestCare, whose main location is in Webster, Texas, has or had nursing home clients in the Houston area as well as in Dallas, Waco, San Antonio, and El Paso. BestCare also had satellite labs in Dallas and San Antonio.

This motion seeks recovery of $10.6 million of taxpayer funds paid to BestCare for P9603 claims of 400 miles or more – miles that no technician actually traveled to collect a specimen.[1] These claims represent miles BestCare billed, per beneficiary, each time it shipped, or purported to ship, a specimen by air from its satellite locations to Houston. To the extent that defendants attempt to argue that shipping specimens amounts to reimbursable "travel", and that the distance of such shipments counts for billable mileage under the relevant Medicare statute, code and guidance, they are wrong. *The only P9603 payment authorized by law*, as a matter of the relevant statute, code and guidance, is for prorated miles actually traveled by a technician to collect a sample.

The parties mediated the action in February 2013. The Court stayed discovery pending the mediation. The mediation was not successful.

The Court has denied all dispositive motions to date, including the defendants' motion to dismiss and the United States' original motion for partial summary judgment, and lifted the stay

---

[1] We are seeking $10.6 million, rather than $11.25 million, because we have used statistical sampling to give BestCare credit for prorated miles that its phlebotomists actually traveled on each trip to collect specimens – a small fraction of the 400 + claimed and paid.

on discovery. The Court ordered the United States to obtain a statistically random sample of Medicare beneficiaries, and ordered BestCare to provide the associated technician travel logs to enable a statistician to determine the number of miles that BestCare could legitimately have billed for the actual travel of its technicians to collect specimens.

The Court also ordered the United States to file a new motion for partial summary judgment on the non-FCA, non-fraud claims. Thus, this motion only addresses the United States' claims of payment by mistake and unjust enrichment. The United States reserves its right to pursue its FCA and common law fraud claims.

## SUMMARY JUDGMENT STANDARD

The Court should grant partial summary judgment to eliminate from trial those matters which are not subject to genuine dispute. Rule 56 states in part, "[t]he judgment sought shall be rendered forthwith if . . . there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law. " Fed. R. Civ. P. 56(c). Where the record taken as whole could not lead a rational trier of fact to find for the non-moving party, there is "no genuine issue for trial" and the court must grant the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 587 (1986).

The mere existence of some alleged factual dispute will not defeat a properly supported motion for summary judgment; the non-moving party must come forward with evidence sufficient for a jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986).

Substantive law identifies which facts are material. Only disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Id.* at 248.

STATEMENT OF MATERIAL FACTS

1. Dr. Karim Maghareh founded BestCare in 2002 as a subchapter S corporation. Ex. A, Maghareh Civil Investigative Demand Testimony, pp. 31 - 33.

2. Dr. Maghareh owns 51% of BestCare. His wife, Farzaneh Rajabi, owns 49% and manages the business money of the business. *Id*., pp. 10, 31 - 33.

3. Dr. Maghareh is the president and the CEO of BestCare. *Id.* at 72.

4. Dr. Maghareh has a Ph.D. in health care administration and an MBA with a concentration in health care. *Id.*, pp. 21, 22, 77.

5. BestCare's billing manager reports directly to Dr. Maghareh. *Id.* at 94.

6. BestCare's main lab is in Webster, Texas. *Id.* at 35.

7. BestCare has or had satellite labs in Dallas, Texas and San Antonio, Texas, as well as a processing center in Waco, Texas. *Id.*, pp. 38 - 40.

8. BestCare has or has had, at various times, nursing home clients throughout Texas, including nursing homes in or around El Paso, Dallas, Waco, and San Antonio. It also has clients in the greater Houston area. *Id.*, pp. 38 - 44.

9. BestCare contracted with and/or employed technicians in Dallas, San Antonio, and El Paso to travel to nursing homes in the respective areas to collect specimens. The specimens were then taken to the local airport and shipped on Southwest Airlines to Houston in one batch, at a cost to BestCare of approximately $100. *Id.*, pp. 171 - 173.

10. BestCare pays its technicians approximately 45 cents per mile for their travel to nursing homes. *Id.* at 150.

11. Dallas is approximately 270 driving miles from Webster, Texas.

12. San Antonio is approximately 220 driving miles from Webster, Texas.

13. El Paso is approximately 760 driving miles from Webster, Texas.

14. BestCare's technicians did not drive or fly from Webster to Dallas to collect specimens, or from Dallas to Webster to return to the lab with specimens they had collected. *Id.* at 176.

15. BestCare's technicians did not drive or fly from Webster to San Antonio to collect specimens, or from San Antonio to Webster to return to the lab with specimens they had collected. *Id.* at 175.

16. BestCare's technicians did not drive or fly from Webster to El Paso to collect specimens, or from El Paso to Webster to return to the lab with specimens they had collected. *Id.*, 176.

17. BestCare billed Medicare for numerous purported round trips exceeding 400 miles to San Antonio, Dallas and El Paso. No technician drove or flew these miles. *Id.* Medicare paid BestCare $11,251,278.00 for mileage alone for these trips. Ex. B, Petron Declaration, Table 2.

18. When BestCare billed P9603 for the trips exceeding 400 miles, it routinely billed round trip mileage, as indicated by the "LR" modifier. *Id.,* para. 9. For the years 2002 to 2009, Medicare paid BestCare $34,877,877. Of this sum, $22,989,827 was billed as round trip mileage under P9603. *Id.,* Table 1.

19. With respect to the claims in issue, for the purposes of this motion, the United States assumes that when BestCare billed for 400+ miles, BestCare technicians actually traveled some, much lesser distance to collect samples. The Declaration of Mike Petron, Ex. B, provides

5

a detailed explanation of the methodology he used to determine that, based on random statistical sampling, BestCare received $10.6 million from Medicare which represents miles no technician traveled to collect a specimen. *See* Para. 25 of Ex. B.

## ARGUMENT

1. <u>The statute governing payment of P9603 is clear: Medicare pays labs for miles actually traveled by technicians to collect specimens from patients. It does not pay for miles that specimens are merely shipped.</u>

Subsection (h) of 42 U.S.C. § 1395l authorizes Medicare to pay laboratories a fee to cover the transportation and personnel expenses for *trained personnel to travel to the location of an individual to collect the sample:*

> [T]he Secretary shall provide for and establish . . . *a fee to cover the transportation and personnel expenses for trained personnel to travel* to the location of an individual *to collect the sample*, except that such a fee may be provided only with respect to an individual who is homebound or an inpatient in an inpatient facility (other than a hospital). In establishing *a fee to cover the transportation and personnel expenses for trained personnel to travel* to the location of an individual *to collect a sample*, the Secretary shall provide *a method for computing the fee based on the number of miles traveled and the personnel costs associated with the collection* of each individual sample.

*Id.*, at § 1395l(h)(3) (emphasis added). When a statute is clear, it must be enforced as written. *Chevron, USA, Inc. v. Natural Resources Defense Counsel, Inc.,* 467 U.S. 837, 842- 843 (1984).

Nothing in the statute authorizes Medicare to pay for the mere shipment of specimens. Defendants' insistence that they are entitled to reimbursement for the miles that specimens were shipped, that is, for "specimen travel," should be rejected as a matter of law.

2. <u>The Medicare billing code, read together with the statute, is clear</u>.

The Medicare billing code implementing the statute, HCPCS billing code P9603, provides reimbursement for "[t]ravel allowance one way in connection with medically necessary

laboratory specimen collection drawn from home bound or nursing home bound patients; *prorated miles actually traveled*." (emphasis added.).[2] The miles billed under this code, the miles in issue in this case, are miles actually traveled to collect a specimen, prorated by the number of specimens in the relevant collection trip. The "travel," according to the statute, above, is *the travel of trained personnel to collect specimens*, namely, travel by technicians or phlebotomists. As a matter of law, when read in light of the authorizing statute, the mere shipment of specimens as air cargo is not actual travel to collect the specimen, and is not reimbursable under billing code P9603.

    3.    <u>The manuals implementing the statute are clear.</u>

        a.    <u>TrailBlazer Manuals</u>

BestCare received a Laboratory and Pathology manual from TrailBlazer ("2002 Manual") when it opened for business in 2002. It provided as follows with regard to the travel allowance:

> Policy: In addition to the specimen collection fee for drawing specimens from homebound and nursing home patients, a travel allowance will also be allowed to cover the costs of collecting a specimen from the patient. *The travel allowance is intended to cover the estimated travel cost and technician's salary associated with collecting the specimen.*

2002 Manual, pp. 41, attached as Exhibit C (emphasis added.)

The "Guidelines" section of the 2002 Manual states that "[n]o allowance can be made when the laboratory technician merely performs a messenger service to pick up specimens drawn by a physician or nursing home personnel." *Id.*, p. 42. Air transport of specimens is akin to a messenger service and is not reimbursable as a matter of law.

---

2 Medicare, though the use of a so-called billing code modifier, "LR," allows labs to bill for prorated round trip mileage, that is, for mileage traveled by a lab technician to a nursing home to draw a specimen and the mileage traveled by the technician to return the specimen to the lab for testing.

The 2002 Manual sets forth an abridged description of the travel allowance billing code, P9603: "Travel allowance one way in connection with medically necessary laboratory (Should not be used unless trip totals 20 or more miles)" and provides that "[t]he -LR modifier may be used to indicate round trip laboratory travel." *Id.*, p. 41.

The discussion of travel allowance fees was expanded in subsequent versions of the TrailBlazer Manual. The 2007 Manual provides: "The travel allowance is intended to cover the estimated travel costs of collecting a specimen including the laboratory technician's salary and travel expenses." Ex. D , attached.

The 2007 Manual goes on to provide:

> Laboratories will not be allowed to bill for more miles than are reasonable or for miles not actually traveled by the laboratory technician.

*Id.,* BLS004890. The language cannot be more clear. However, BestCare filed more 400 + mile claims in 2007 than in any other year; it filed 12,754 claims for travel of 400 miles or more. That year alone, BestCare received over $7.8 million for P9603 claims, more than any other year. Ex. B, Table 3. Ex. B, Petron Declaration, Table 1.

### b. CMS Manual

CMS publishes manuals on its website. Section 60.2 of the relevant CMS Manual provides:

> In addition to a specimen collection fee allowed under §60.1, Medicare, under Part B, covers a specimen collection fee and travel allowance *for a laboratory technician to draw a specimen* from either a nursing home patient or homebound patient under §1833(h)(3) of the Act and payment is made based on the clinical laboratory fee schedule. *The travel allowance is intended to cover the estimated travel costs of collecting a specimen and to reflect the technician's salary and travel costs.*

8

> The additional allowance can be made only where a specimen collection fee is also payable; i.e., *no travel allowance is made where the technician merely performs a messenger service to pick up a specimen* drawn by a physician or nursing home personnel….

Ex. E, Medicare Claims Processing Manual, 2008 Chapter 16, § 60.2 (emphasis added).

> The Manual gives some simple examples (emphasis supplied):
>
> Example 1: In CY 2008, *a laboratory technician travels* 60 miles round trip from a lab in a city to a remote rural location, and back to the lab to draw a single Medicare patient's blood. The total reimbursement would be $62.10 (60 miles × 1.035 cents a mile), plus the specimen collection fee.
>
> Example 2: In CY 2008, *a laboratory technician* travels 40 miles from the lab to a Medicare patient's home to draw blood, and then *travels an additional 10 miles to a non-Medicare patient's home* and then *travels 30 miles to return to the lab*. The total *miles traveled* would be 80 miles. The claim submitted would be for one half of the miles traveled or $41.40 (40 × 1.035), plus the specimen collection fee.

*Id*., p. 70. These examples, by their very terms, refer to technician travel, and not to "travel" of specimens that the technician draws and brings back to the lab. They also describe the concept of prorating the miles among the number of draws. Moreover, like the TrailBlazer Manuals, the CMS Manual states: "At no time will the laboratory be allowed to bill for more miles than are reasonable or for miles not actually *traveled by the laboratory technician*." *Id*.

As a matter of law, only prorated miles actually traveled by a lab technician to draw a specimen from a nursing home or homebound patient are reimbursable by Medicare. Defendants' effort to retain payments made by Medicare for mileage that no technician traveled, representing only the distance that specimens were, or purportedly were, shipped from various cities in Texas to Houston, is contrary to law.

    3. <u>Medicare reimburses only services that are "reasonable and necessary." 42 U.S.C. § 1395y(a)(1)(A).</u>

Dr. Maghareh acknowledged that he was aware of the overarching rule, set forth, among other places, at 42 U.S.C. § 1395y(a)(1)(A), that Medicare billing must be reasonable. Ex. A at 164. However, when shown a $1,500 bill to Medicare for mileage associated with a $7 blood draw and a $37 test, he testified that "I would assume it is reasonable because Medicare thought so too, and they paid us," while fully acknowledging that no one traveled 1,500 miles as represented on the bill. *Id.*, pp. 193 - 202.

No reasonable trier of fact could find that claiming and receiving payment of $1,500 (roughly $1 per the round trip distance between Houston and El Paso), or more than $400 (more than roughly $1 per the round trip distance between Houston and Dallas or San Antonio), for a single specimen flown in a batch with other specimens, at a total cost of approximately $100, is reasonable or just. Defendants abused the system for their own unlawful profit and were thus unjustly enriched by at least $ 10.6 million.

4. The United States is entitled to recover all payments made to BestCare for shipment of specimens. TrailBlazer made these payments by mistake. They were unauthorized by any statute, and they were unreasonable.

The United States has broad power to recover funds wrongfully, erroneously or illegally paid by its agents. *United States v. Wurts*, 303 U.S. 414, 415 (1938); *LTV Educ. Sys. v. Bell,* 862 F. 2d 1168, 1175 (5th Cir. 1989) (government may recover money it "mistakenly, erroneously, or illegally paid from a party that received the funds without right").

Not only may the United States recover such payments from the party that received the funds; it may also recover from any third party "into whose hands the mistaken payments flowed where that party participated in and benefited from the tainted transaction." *Id.* Thus, Dr. Maghareh is liable as well as BestCare, as he and his wife are the sole owners of BestCare, and

10

controlled the funds.[3]

Medicare must rely on the honesty of providers when paying claims, due to the immense volume of claims. BestCare submitted to Medicare, and Medicare paid BestCare, millions of dollars for P9603 claims that did not meet payment criteria. Isolating those trips for which BestCare billed Medicare for more than 400 miles, contrary to law, Medicare mistakenly paid BestCare at least $10.6 million for the period 2004 to 2009. Moreover, BestCare billed all of these charges as round trips. Ex. B, para. 9. No BestCare technician traveled 400 or more miles by any means, plane or automobile, to collect specimens, and no specimen made a round trip. The defendants must return the funds they wrongfully received.

5.  Unjust Enrichment

To prevail on a theory of unjust enrichment under federal common law, the Government must show it had a reasonable expectation of payment, defendant should reasonably have expected to pay, *or* that society's reasonable expectations of person and property would be defeated by nonpayment. *United States ex rel. Roberts v. Aging Care Home Health*, 474 F. Supp. 2d 810, 820 (W.D. La. 2007), citing *Provident Life & Accident Ins. Co. v. Waller,* 906 F. 2d. 985, 993-94 (4th Cir. 1990). The United States need not prove that the defendants still have the funds in question, only that they were unjustly enriched. *SEC v. United Energy Partners, Inc.*, 88 Fed. Appx. 744, 746 (5th Cir. 2004) ("[A] person remains unjustly enriched by what was illegally received, whether [or not] he retains the proceeds of his wrongdoing.")

BestCare and its owners, Dr. and Mrs. Maghareh, received at least $10.6 million of Medicare funds to which they were not entitled. The United States' demand for return of these

---

[3] Due to Defendants' claims of inability to pay the sum demanded by the United States, the Court ordered Defendants to produce financial information. This information shows the Maghareh enjoyed an extravagant lifestyle, which was largely financed by Medicare.

11

funds is reasonable, and society's expectations would be defeated by nonpayment.

  6. <u>Any factual dispute as to communications between BestCare and the Medicare contractors is not material to this motion.</u>

  During the course of this litigation, in hearings and in pleadings, the defendants have attempted to shift the focus to the Medicare contractors. The theme ranges from "the contractors condoned the billing" to "the contractors did not stop us." The disputes about what the contractors did and did not do or say are not material to this motion.

  The Supreme Court has made it clear that erroneous advice from a Medicare contractor is insufficient to justify a health care provider's retention of improperly received Medicare payments. *Heckler v. Community Health Services*, 467 U.S. 51, 64 (1984) ("There is simply no requirement that the Government anticipate every problem that may arise in the administration of a complex program such as Medicare; neither can it be expected to ensure that every bit of informal advice given by its agents in the course of such a program will be sufficiently reliable to justify expenditure of sums of money as substantial as those spent by respondent.").

  The contractors were only authorized, under the relevant statute, code and guidance, to pay laboratories for prorated miles actually traveled by technicians to collect specimens. Their failure to "catch" BestCare is not a defense that allows defendants to retain millions of taxpayer dollars to which they were not entitled. The United States is entitled to recover these funds as matter of law. There are no material facts in dispute, and no trial is necessary on the United States' common law claims of payment by mistake and unjust enrichment.

<u>CONCLUSION</u>

  The rule is clear: Medicare pays a per-mileage fee for actual travel by lab technicians to collect lab specimens, not for miles that specimens are merely transported, unaccompanied by

the technician that drew the specimen. Any contractor who paid for such claims was mistaken in doing so. The United States may recover erroneously made payments.

Medicare mistakenly paid defendants and defendants were unjustly enriched in the amount of at least $10.6 million of claimed miles not actually traveled by a technician to collect test specimens.

The United States asks for entry of a partial summary judgment of $10.6 million against Dr. Maghareh and his company, BestCare Laboratory Services, LLC, and that such judgment be immediately entered pursuant to Fed. R. Civ. P. 54(b), as there is no just reason for delay.

>Respectfully submitted,
>
>STUART F. DELERY
>Assistant Attorney General
>
>KENNETH MAGIDSON
>United States Attorney
>
>By: s/ Michelle Zingaro
>MICHELLE ZINGARO
>Assistant United States Attorney
>State Bar No. 12345500
>Fed. Bar No. 14463
>1000 Louisiana, Suite 2300
>Houston, Texas 77002
>Telephone: (713) 567-9512

## CERTIFICATE OF SERVICE

  I certify that on October 25, 2013, the United States' Motion and Memorandum for Partial Summary Judgment was filed electronically and service accomplished automatically pursuant to the Rules of Court through the Notice of Electronic Filing (NEF) issued by the Court's Electronic Case Filing (ECF) system on the following counsel of record:

Susan J Arenella
Assistant Attorney General
Office of the Texas Attorney General
Civil Medicaid Fraud Division
PO Box 12548
Austin, Texas 78711-2548
susan.arenella@oag.state.tx.us
Counsel for the State of Texas

David James Manley
11811 North Frwy., Suite 512
Houston, TX 77060
281-436-7343
Fax: 713-481-6367
dmanleylaw@aol.com
Counsel for Defendant Karim A. Maghareh

Mark Stephen Armstrong
EpsteinBeckerGreen
Two Houston Center
909 Fannin, Suite 3838
Houston, TX 77010
marmstrong@ebglaw.com
Counsel for Defendant BestCare Laboratories, Inc.

Mitchell R. Kreindler
Kreindler & Associates
9219 Katy Freeway, Suite 206
Houston, TX 77024m
kreindler@blowthewhistle.com
Counsel for Relator Richard Drummond

  By agreement of Counsel, service on the following persons who are not registered with the ECF system, was also accomplished via the NEF issued by the ECF System:

William F. Gould
Holland & Knight
1600 Tysons Boulevard, Suite 700
McLean VA 22102
william.gould@hklaw.com
Counsel for Defendant Karim A. Maghareh

           s/ Michelle Zingaro
           Michelle Zingaro