**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex. rel.* RICHARD DRUMMOND | § § § | |
| *Plaintiff,* | § § | Civil Action No. 4:08-CV-02441 |
| v. | § § | Hon. Judge Hughes |
| BESTCARE LABORATORY SERVICES LLC, and KARIM A. MAGHAREH, | § § § § | |
| *Defendants.* | § § § | |

**DEFENDANTS' SUPPLEMENT TO THEIR MOTION FOR**
**SUMMARY JUDGMENT UNDER THE FALSE CLAIMS ACT**

Defendants, BestCare Laboratory Services, LLC ("BestCare") and Karim A. Maghareh, Ph.D. ("Dr. Maghareh") (collectively referred to as, "Defendants"), file this Supplement to Their Motion for Summary Judgment Under the False Claims Act, and would show the Court as follows:

### I.   SUMMARY OF THE ARGUMENT

1.   Defendants previously filed a Motion for Summary Judgment. Doc. 91. The Defendants' supplemental motion seeks to dismiss Relator, Richard Drummond, from this action because the information on which he based his claims was publicly disclosed prior to the filing of his *qui tam* complaint and he was not the original source of the information. Although dismissing Relator will not materially impact the United States of America's (the "Government's") claims, it will: (1) preclude Relator from participating in any monetary recovery; and, (2) deny Relator's right to recover from the Defendants any reasonable costs or attorneys' fees under 31 U.S.C. §3730(d)(1)-(2).

1

2. Investigations and audits were performed by Medicare's contractors including, TrailBlazer Health Enterprises, LLC ("TrailBlazer"), TriCenturion, and Comprehensive Error Rate Testing Documentation Contractors ("CERT DC") prior to the filing of Relator's *qui tam* complaint. Since the audits and investigations occurred prior to the filing of Relator's *qui tam* complaint, there was a "public disclosure". Moreover, the contractors' investigations and audits were targeted at BestCare's travel allowance claims, specifically including claims that were: (a) not prorated; and, (b) exceeded 400 miles. The allegations in the Relator's *qui tam* complaint are substantially similar to the publically disclosed allegations. As a result, Relator's claims are barred unless he qualifies as the "original source".

3. Relator is not the original source of the information on which the allegations or transactions in his *qui tam* complaint are based because he did not have direct and independent knowledge of the information. As a result, Relator failed to meet the jurisdictional requirements of the False Claims Act ("FCA") and this Court should dismiss Relator's claims.[1]

## II. STATEMENT OF UNDISPUTED FACTS

4. The following facts are undisputed:

- The Government reimburses Medicare claims through the Centers for Medicare and Medicaid Services ("CMS"). CMS, in turn, contracts with private entities to administer, process, pay, audit and investigate Medicare claims.

- Beginning in 2003, CERT DC began auditing BestCare's P9603 travel allowance claims. Doc. 91-16, Doc. 91-17. The audited claims included travel allowance claims that were not prorated and exceeded 400 miles.

- In September 2006, TrailBlazer referred BestCare's P9603 billings to TriCenturion for investigation. The referral to

---

[1] Relator owns a clinical laboratory that is a direct competitor of BestCare. One purpose of the Relator's action was to gain a competitive advantage over BestCare. In fact, after the *qui tam* complaint was unsealed, Relator purposefully met with BestCare's customers and falsely stated that Dr. Maghareh was going to jail and that BestCare was going to close. Exhibit 1 at pp. 44 – 45. Relator's actions were primarily motivated by his intention to destroy BestCare so that he would no longer have to compete for nursing home patients with BestCare's quality clinical laboratory services.

        TriCenturion was based upon BestCare's travel allowance claims pertaining to its San Antonio nursing homes. TrailBlazer's rationale for referring the complaint was "Lab not prorating their travel allowance. Lab receiving higher reimbursement than peers for same tests." Doc. 99-4.

- In January 2007, TriCenturion, CMS' Program Safeguard Contractor, investigated TrailBlazer's complaint and audited BestCare's claims relating to five (5) Medicare beneficiaries who resided in San Antonio. Doc. 91-18. BestCare's P9603 claims for these Medicare patients were not prorated and exceeded 400 miles.

- In June 2008, TrailBlazer investigated BestCare's P9603 claims from El Paso. The investigation was initiated by a TrailBlazer representative questioning "code P9603-LR for 1517 miles". Doc 99-7. A few weeks later, TrailBlazer's investigation continued with the reviewer stating "provider is billing over 1400 miles on a lot of claims." Doc 91-19. TrailBlazer referred BestCare's P9603 billings of over 1500 miles to TriCenturion for investigation. Exhibit 2. TrailBlazer's rationale for referring the complaint was "provider billing over 1500 miles for collection fee." *Id.*

- In June 2008, TriCenturion initiated its investigation of TrailBlazer's complaint relating to the travel allowance miles over 1500 miles. *Id.* This was TriCenturion's second investigation regarding BestCare's P9603 claims.

- On August 6, 2008, Relator filed his *qui tam* complaint against BestCare and Dr. Maghareh and based the complaint on Defendants' alleged failure to prorate travel allowance claims. Doc. 1.

- The audits and investigations conducted by the Medicare's contractors (CERT DC, TrailBlazer and TriCenturion) occurred before Relator's *qui tam* complaint was filed.

- Relator's knowledge of the information which formed the basis of the allegations in his complaint is entirely derived from a second-hand source. Exhibit 1 at pp. 42 – 43. Specifically, Relator illegally obtained the information that was alleged in the complaint from Martha Shirali, BestCare's former billing manager, who removed or caused to be removed, without Defendants' knowledge or consent, confidential records containing individually identifiable health information that is protected by HIPAA.

3

### III.     ARGUMENTS AND AUTHORITIES

5.      Relator bears the burden of proving that subject matter jurisdiction exists under the FCA.  *Hays v. Hoffman*, 325 F.3d 982, 987 (8th Cir. 2003); *U.S. ex. rel. Rosales v. San Francisco Housing Auth.*, 173 F. Supp. 2d 987, 998 (N.D. Cal. 2001).  Relator failed to establish that this Court has subject matter jurisdiction to hear the *qui tam* case.

**A.     There was a "Public Disclosure" Prior to the Filing of Relator's Complaint.**

6.      In 1986, Congress amended FCA to incorporate a public disclosure bar which required the following:

> "No court shall have jurisdiction over an action under [31 U.S.C. § 3730] based upon the public disclosure of allegations or transactions in a criminal civil or administrative hearing, in a congressional, Government Accountability Office report ***hearing, audit, or investigation***, or from the news media, unless the action is brought by the Attorney General or the person brining the action is an original source of the information."
>
> 31 U.S.C. § 3730(e)(4)(A) (1986 Amendment) (emphasis added).

7.      Under the plain language of 31 U.S.C. § 3730(e)(4), all "allegations or transactions" that are disclosed in a "… hearing, audit, or investigation" are subject to the jurisdictional bar.  *Id*.  As such, allegations or transactions that are addressed during the course of an audit or investigation conducted by federal administrative agencies, such as Medicare fiscal intermediaries or other government agents, are considered to have been "publicly disclosed" under the False Claims Act.  *U.S. ex. rel. Reagan v. East Texas Medical Center Regional Healthcare System,* 274 F. Supp. 2d 824, 845 (S.D. Texas 2002).  When the "allegations or transactions" are raised during an audit that is conducted by a government contractor, and an

4

FCA *qui tam* action is "even partly based upon" such publicly disclosed allegations and transactions, then the statutory jurisdictional bar precludes the *qui tam* claims. *Id*. at 851.

8. Audits conducted by third party payors acting in their capacity as a Medicare fiscal intermediary are sufficient to meet the public disclosure bar. *Id.* In this case, the Government's own contractors, including a Medicare Administrative Contractor ("MAC"),[2] Medicare Program Safeguard Contractor ("PSC"),[3] and Comprehensive Error Rate Testing Document Contractor ("CERT DC"),[4] conducted numerous audits and/or investigations of BestCare's travel allowance claims. Doc. 99 at ¶¶23 – 33. The audits involved P9603 claims that were not prorated and exceeded 400 miles, roundtrip.

9. Specifically, beginning in or around 2003, and continuing throughout the relevant period, BestCare received numerous requests for medical records/documentation from the CERT DC. The audited claims reviewed by the CERT DC over many years, included targeted travel allowance claims that exceeded 400 miles. Doc. 99 at ¶23.

10. On September 25, 2006, TrailBlazer referred BestCare's P9603 billings to TriCenturion for investigation. Doc. 99-4. TriCenturion was Medicare's PSC. The referral to TriCenturion was based upon BestCare's travel allowance claims pertaining to its San Antonio nursing home patients. TrailBlazer's rationale for referring the complaint was "Lab not prorating

---

[2] Medicare Administrative Contractors are authorized under the Medicare Modernization Act of 2003 ("MMA") to serve as a claim administration contractor. MACs are responsible for: (i) claims processing for specific workloads in certain jurisdictions; (ii) pre-pay and post-pay medical review; (iii) national correct coding initiatives edits pre-pay review; (iv) medically unlikely edits pre-pay review; (v) coverage determinations; (vi) overpayment collection; and (vi) provider enrollment, education and training.

[3] Program Safeguard Contractors contract with Medicare to perform benefit integrity work throughout the nation. PSCs are responsible for identifying cases of suspected fraud and taking appropriate action. These contractors perform benefit integrity activities for various Medicare Parts, including Part B. PSCs are now known as Zone Program Integrity Contractors ("ZPICs").

[4] CERT DCs are Medicare contractors who randomly select sample Medicare FFS claims, review the claims and medical records from the providers/suppliers who submitted them, and then review the claims for compliance with Medicare coverage, coding, and billing rules. *See* Doc. 91-16 for a sample of the CERT DC's record requests that were sent to BestCare; see *also* Doc. 91-17 for an example of the CERT DC's documentation pull list specifically requesting supporting documentation concerning BestCare's P9603 claims.

5

their travel allowance. Lab receiving higher reimbursement than peers for same tests." *Id.* Therefore, as of September 2006, information concerning the fact that BestCare was not prorating its P9603 travel allowance was known by TrailBlazer and publicly disclosed to the Government through TrailBlazer's audit of the claims.

11. Following TrailBlazer's referral, TriCenturion investigated and audited BestCare's P9603 claims. *Id.* By letter dated January 25, 2007, TriCenturion notified BestCare of the audit and TriCenturion requested specific information relating to five (5) Medicare beneficiaries residing in San Antonio nursing homes. Doc. 91-18. As part of its audit/investigation, TriCenturion specifically requested BestCare provide: (1) diagnostic test reports, (2) physician orders, and (3) driver's logs relating to these five (5) Medicare beneficiaries from San Antonio. *Id.* TriCenturion's audit/investigation encompassed 545 total patient days and included 118 P9603 claims each of which were greater than 400 miles. Doc. 99-5. Again, in January 2007, information concerning the fact that BestCare's practice for billing miles that were not prorated was known by TriCenturion and publicly disclosed to the Government through TriCenturion's audit and investigation.

12. On June 5, 2008, TrailBlazer's representative, Norma Woods (perhaps as a result of BestCare's recently filed redetermination requests involving travel for El Paso nursing home beneficiaries), submitted the following question to TrailBlazer's Provider Redetermination team: "on the code P9603-LR for 1517 miles amount questioned. I need help trying to determine services was [*sic*] paid correct." Doc. 99-7. More than a week later, TrailBlazer's representative Cindi Henry presented Ms. Woods' question as a policy/coverage research problem within TrailBlazer stating that "This provider…is located in Webster, Texas and that patients are in the El Paso area. This provider is billing over 1400 miles on a lot of claims. This seems like a lot of

6

miles billing for this code, a lot of travelling for lab tests??? Can he bill like this?" Doc. 99-8. By June 2008, BestCare's billing for miles related to servicing El Paso beneficiaries was publicly disclosed to the Government through TrailBlazer's investigation of the claims. TrailBlazer referred its complaint to TriCenturion for investigation. Exhibit 2.

13. On June 16, 2008, TriCenturion initiated its investigation of TrailBlazer's complaint relating to the travel allowance miles over 1500 miles. *Id.* Once again, the information concerning BestCare's P9603 claims was audited and investigated by TriCenturion and was publicly disclosed to the Government prior to Relator filing his *qui tam* complaint.

14. There is no dispute that multiple Medicare contractors -- authorized agents of the United States Government -- audited and investigated BestCare's P9603 claims. Medicare's contractors audited and investigated the allegations and transactions that formed the basis of Relator's complaint before August 6, 2008, the date on which Relator filed his *qui tam* action. As a result of the prior public disclosure, unless Relator is the "original source" of the information, he is jurisdictionally barred from participating in this case and Relator's claims should be dismissed. Relator is not the "original source" of the information and his claims should be dismissed from the case.

B.  **Relator is not the "Original Source".**

15. An exception exists under the 1986 FCA public disclosure bar for relators who are the "original source" of the information on which the allegations against a defendant are based. Under the 1986 FCA public disclosure bar, an "original source" means an individual who has: (1) direct and independent knowledge of the information on which the allegations are based, and (2) voluntarily provided the information to the Government before filing an action under the FCA which is based on the information. 31 U.S.C § 3730(e)(4). The Relator, however, does not qualify as an "original source" and is jurisdictionally barred from proceeding with this case.

16. An "original source" must have "direct" and "independent" knowledge "of the information on which the allegations are based. Direct knowledge is knowledge that is firsthand and derived from the relator's own labor. *U.S. ex rel. Kinney v. Stoltz*, 327 F.3d 671, 674 (8th Cir. 2003) ("a relator has direct knowledge when he sees it with his own eyes"); *U.S. ex rel. Devlin v. California*, 84 F.3d 358, 362 (9th Cir. 1996) ("A person who learns secondhand of the allegations of fraud does not have 'direct' knowledge within the meaning of [the FCA]"). Direct knowledge was further defined by the Fifth Circuit as "knowledge derived from the source without interruption or gained by the relator's own efforts rather than learned second-hand through the efforts of others." *U.S. ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346, 355 (5th Cir. 2003); *see U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 287 F. App'x 396, 400 (5th Cir. 2008).

17. Relator admits that he had no direct knowledge of the information on which the allegations in the complaint are based. Specifically, Relator testified as follows:

> Q: Okay. If you'll turn to Page 5, Paragraph 15, it says that you have direct and independent knowledge of the information on which the allegations are based. But isn't it true that your knowledge is based exclusively upon the information that you derived from Martha Shirali?
> A: As far as Mr. Maghareh's involvement, yes.
> Q: As far as BestCare's involvement, would the answer still be yes?
> A: Yes.
>
> Exhibit 1 at pp. 42 – 43.

18. Relator came into possession of the information through BestCare's former Billing Manager, Martha Shirali, who was employed by Relator's laboratory, Xpress Clinical Laboratory, in February 2008 as a Billing Manager. Exhibit 3 at p. 40. Ms. Shirali told Relator

8

that when she was Billing Manager at BestCare, she did not prorate BestCare's travel miles. *Id.* at p. 106.

19. During his deposition, Relator further confirmed that it was Ms. Shirali who was the source of his information regarding BestCare's travel allowance claims. According to Relator, Ms. Shirali told him that Xpress Clinical Labs was not billing enough mileage and "she described the scheme that was outlined in the complaint for how BestCare billed." Exhibit 1 at p. 29. A short time later, Martha Shirali "showed [Relator] some EOBs, or I don't know if – not EOBs, they were claims that she had filed at BestCare to show [Relator] the way they [BestCare] billed." *Id.* at p. 32. A copy of the Medicare Remittance Notices that Relator received from Ms. Shirali and which formed the further basis of his allegations is attached hereto as Exhibit 4.[5] Exhibit 1 at p. 33. It is indisputable that Relator used the improperly obtained, second-hand information, which he received from Ms. Shirali, to form the basis of his allegations against Defendants. *Id.* at p. 36. As a result, Relator is not the "original source" of the information because he does not have "direct" knowledge required of the information on which the allegations are based. *Stennett v. Premier Rehabilitation, LLC*, 2012 U.S. App. LEXIS 13501 (5th Cir. 2012) (The term "direct" requires knowledge derived from the source without interruption rather than learned second-hand through the efforts of others.)

---

[5] Due to patient confidentiality concerns, individually identifiable information has been redacted from the Exhibit. There is no dispute that the confidential Medicare Remittance Notices were taken without BestCare's authorization or consent. There is also no dispute that the Medicare Remittance Notices contained individually identifiable health information relating to BestCare's patients. Exhibit 1 at pp. 33 – 36. The Health Insurance Portability and Accountability Act ("HIPAA") makes it an offense to "obtain[] individually identifiable health information relating to an individual" or "disclose[] individually identifiable health information to another person." 42 U.S.C. §1320d-6(a)(2)-(3). Exhibit 1 at p. 33. Drummond admitted to obtaining sensitive individually identifiable health information regarding BestCare's patients. Relator's use and possession of the individually identifiable health information was not authorized and thus, constitutes a violation of HIPAA, which violation was reported to the Government, but apparently ignored.

## IV. CONCLUSION

20. Relator's *qui tam* action must fail since: (1) prior to his action, there had already been "public disclosure" of BestCare's P9603 claims through the audits/investigations conducted by Medicare's contractors, TrailBlazer, TriCenturion, and CERT DC, (2) Relator's allegations against Defendants are substantially similar to the publically disclosed allegations, and (3) Relator is not the original source of the information. Accordingly, there is no subject matter jurisdiction for Relator's claims and his *qui tam* case should be dismissed as a matter of law.

Dated: April 25, 2014.

Respectfully Submitted,

  /s/ Mark S. Armstrong

Mark S. Armstrong
Attorney-in-Charge
Texas Bar Number: 01321900
Federal Bar Number: 219390
EPSTEIN BECKER & GREEN, P.C.
Two Houston Center
909 Fannin, Suite 3838
Houston, Texas 77010
Telephone:    (713) 300-3210
Facsimile:    (713) 300-3230
Email:  marmstrong@ebglaw.com

Daniel E. Gospin
Texas Bar Number:  24072483
Federal Bar Number:  1330514
EPSTEIN BECKER & GREEN, P.C.
Two Houston Center
909 Fannin, Suite 3838
Houston, Texas 77010
Telephone:    (713) 300-3211
Facsimile:    (713) 300-3231
Email:  dgospin@ebglaw.com

*Attorneys for Defendant*
*BestCare Laboratory Services, LLC*

William F. Gould
Attorney-in-Charge
HOLLAND & KNIGHT LLP
800 17th Street, NW, Suite 1100
Washington DC 20006
Telephone: (202) 419-2577
Facsimile: (202) 955-5564
Email: William.gould@hklaw.com

David J. Manley
State Bar No. 24001593
Federal Id No. 24301
15201 Mason Road, Suite 1000-211
Cypress, Texas 77433
Telephone: (281) 687-6889
Facsimile: (713) 481-6367
Email: Dmanleylaw@aol.com

*Attorneys for Defendant*
*Dr. Karim A. Maghareh*

## CERTIFICATE OF SERVICE

I hereby certify that on this **25th** day of **April**, **2014** a copy of the foregoing Supplemental Motion for Summary Judgment was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system and that such notice constitutes service of the filed document on all known Filing Users including the following:

Michelle Zingaro
Assistant United States Attorney
919 Milam, Suite 1500
P.O. Box 61129
Houston, Texas 77208
michelle.zingaro@usdoj.gov
*Counsel for the United States*

Richard S. Nicholson
United States Department of Justice
Civil Division
Commercial Litigation Branch
601 D Street, N.W., Room 9928
Washington, DC 20004
richard.nicholson@usdoj.gov
*Counsel for the United States*

Mitchell R. Kreindler
Melissa Neiman
Kreindler & Associates
9219 Katy Freeway, Suite 206
Houston, Texas 77024
mkreindler@blowthewhistle.com
mneiman@blowthewhistle.com
*Counsel for Relator Richard Drummond*

William F. Gould
Megan Mocho Jeschke
Holland & Knight, LLP
800 17th Street, NW, Suite 1100
Washington DC 20006
william.gould@hklaw.com
*Counsel for Karim A. Maghareh*

Susan J. Arenella
Assistant Attorney General
Office of the Texas Attorney General
Civil Medicaid Fraud Division
PO Box 12548
Austin, Texas 78711-2548
susan.arenella@oag.state.tx.us
*Counsel for the State of Texas*

David J. Manley
15201 Mason Road, Suite 1000-211
Cypress, Texas 77433
dmanleylaw@aol.com
*Counsel for Karim A. Maghareh*

    */s/ Mark S. Armstrong*
Mark S. Armstrong