United States District Court      Southern District of Texas

| | |
|---|---|
| United States of America and <br> the State of Texas *ex rel.* <br> Richard Drummond, <br><br>     Plaintiffs, <br><br> *versus* <br><br> BestCare Laboratory Services LLC, *et al.*, <br><br>     Defendants. | Civil Action H-08-2441 |

## Opinion on Partial Judgment

1.   *Introduction.*

A laboratory billed the people of the United States of America more than $10.60 million in travel expenses that it did not incur. The United States will recoup its money.

2.   *BestCare.*

Karim Maghareh and his wife, Farzaneh Rajabi, founded BestCare Laboratory Services, LLC, in 2002. Maghareh owns 51% and Rajabi owns 49% of it. As a closely held corporation, it does not pay income taxes directly – its revenue is passed to Maghareh and Rajabi.

BestCare operates a diagnostic laboratory in Webster, Texas – a suburb of Houston – where it tests specimens from primarily disabled and elderly patients. In addition to its business in Houston, it has workers in Dallas, San Antonio, and El Paso. These collect specimens to be tested in Webster.

BestCare's workers do not travel from these cities to Webster with the specimens. They ship the specimens on flights to Houston for roughly $100 per batch. A different worker from the Webster laboratory retrieves the batches from Houston's airport.

3.  *Medicare.*

Title 18 of the Social Security Act establishes, among other things, government-subsidized insurance for disabled and elderly Americans.[1] Under this Act, laboratories may bill the United States $1.00 per mile that their workers travel to collect specimens from patients.

The fee covers "the transportation and personnel expenses" for a worker to travel to the patient to collect the sample and return.[2] It is "based on the number of miles traveled and personnel costs associated with collection."[3]

Axiomatically, to be eligible for a reimbursement, the laboratory must have paid an expense – an expense of a technician's going to and from the collection of a sample. When BestCare had gathered the samples in El Paso to pack for shipping to Webster, the transportation for collection had been completed. Choosing to test them 765 miles away was not required to collect them for the patients.

4.  *Scheme.*

The United States will recoup the $10.60 million that it paid BestCare because: (a) it mistakenly paid it;[4] and (b) BestCare would be unjustly enriched if it retained the money.[5]

BestCare billed the United States $1.00 per mile for each specimen's trip from Dallas, San Antonio, and El Paso even though its workers did not accompany the specimens. It wants to be paid, in other words, for travel expenses that its workers did not incur. Further, it is allowed the personnel cost because a trained person is needed to draw the blood or other specimen. Simply re-transporting the sample would require no human accompaniment.

BestCare also billed for each specimen separately by calculating the maximum number of miles that its worker could have theoretically driven to retrieve them. In reality, the worker

---

[1] *See* 42 U.S.C. § 1395-1395ccc.

[2] 42 U.S.C. § 1395l.

[3] *Id.*

[4] United States v. Wurts, 303 U.S. 414, 415 (1938).

[5] Sec. & Exch. Comm'n v. United Energy Partners, Inc., 88 Fed. Appx. 744, 746 (5th Cir. 2004).

retrieved many specimens in a single trip. He did not travel back to the laboratory after collecting each specimen.

BestCare says that it cannot be held liable if it had interpreted the Act reasonably.[6] When asked whether it was reasonable to bill the public $1,500 in travel expenses for a $43-blood test, Maghareh said, "I would assume it is reasonable because Medicare thought so too, and they paid us." No reasonable person could agree.

BestCare, in an argument that would embarrass a middle-school debater, insists that the rule does not say that the sample has to be conveyed by a person. It does, however, say that part of the reimbursement covers the technician's pay. BestCare has intentionally requested reimbursement for expenses it has not incurred, nor paid. Its principals banked on Medicare's poor management of our money and program. It worked for awhile – until a citizen complaint.

5. *Contractors.*

Although common sense, the statute, and its regulations prohibit BestCare's scheme, it insists that third-party contractors – hired by the United States to administer Medicare – approved and paid them. That is true. That they erred does not excuse BestCare's dishonest predicate to their error.

Bad advice from a Medicare contractor does not bind the people of the United States.[7] BestCare had nothing to reimburse, so its having to refund the overpayment causes it no loss. Besides, the contractors have authority to pay claims for expenses from travel by technicians to collect specimens; if they pay false invoices, their error does not create title to the funds in the person paid. BestCare has billed for miles its technicians did not travel. No contractor can change this obdurate reality.

The manuals that the contractors gave BestCare say that it may not bill for these expenses. They explain that the travel allowance is intended to cover the "estimated travel cost and technician's salary associated with collecting the specimen." A 2007 addition to the manual says that laboratories cannot bill "for miles not actually traveled by the laboratory technician."

---

[6] *See* 42 U.S.C. § 1395gg.

[7] Heckler v. Community Health Services, 467 U.S. 51, 64 (1984).

BestCare says that it talked to people at the government who approved the practice. It offers notes of telephone conversations that simply record approval or a transfer to another. It has no record of the precise question that the clerk was asked. It did not seek a formal approval based on the facts of its practice. Those conversations cannot justify billing for expenses not incurred. Equity requires that a person relying on an assurance to have changed his position to his detriment. Assuming the conversations indicated approval, the only thing that BestCare did in reliance was to lie more.

BestCare says that it hired clerks who independently administered its billing. It says that it was justified in relying on their professional guidance. They were neither independent nor professional. They were employees. All of their training came from Maghareh. After each clerk learned more about his scheme, if they questioned him about it, he fired them.

6. *Preemption.*

Although the United States can administratively recoup overpayments through its programs, it is not obliged to use them.[8] The Act does not displace the common law and other remedies that the United States may ordinarily pursue.

7. *Personal liability.*

Maghareh and his wife formed a limited-liability company. They were its officers. They managed it. They ran a scheme to bill the government $18,360 for shipping 24 samples 765 miles by air freight, for example. For these revenues, BestCare had no claim; Maghareh and Rajabi took that money knowing it source, taking BestCare's title – none.[9]

8. *Conclusion.*

This opinion addresses a fraction of the transgressions in this case. To simplify the facts about what BestCare's workers did with the specimens, the court has considered only bills for over 400 miles of travel – the most egregious cases.

---

[8] United States v. Lahey Clinic Hosp., 399 F.3d 1, 16 (1st Cir. 2005).

[9] A. Benjamini, Inc. v. Jonathan's Fine Jewelers, 2 S.W.3d 611, 613 (Tex. App. – Houston 1999).

The United States of America *ex relatione* Richard Drummond will take $10,600,000 from BestCare Laboratory Services, LLC, and Karim A. Maghareh.

Signed on August 21, 2014, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge