United States District Court
Southern District of Texas
**ENTERED**
April 03, 2018
David J. Bradley, Clerk

United States of America and §
the State of Texas *ex rel.* §
Richard Drummond, §
　§
　　　　　Plaintiffs, §
　§
*versus* §　　　　　　　　　　Civil Action H-08-2441
　§
BestCare Laboratory Services, LLC, *et al.*, §
　§
　　　　　Defendants. §

## Opinion on Summary Judgment

1. *BestCare.*

Karim Maghareh and his wife, Farzaneh Rajabi, founded BestCare Laboratory Services, LLC, in 2002. Maghareh owns 51% and Rajabi owns 49%. BestCare operates a diagnostic laboratory in Webster – a suburb of Houston – where it tests specimens mostly from disabled and elderly patients. In addition to its business in Houston, it has workers in Dallas, San Antonio, and El Paso. They collect specimens to be tested in Webster.

BestCare billed Medicare for every mile a specimen traveled, even when (a) that specimen was not accompanied by a technician or (b) it was one of many samples collected in a single trip.

BestCare's workers shipped specimens on flights to Houston for roughly $100 per batch. The workers did not travel from these cities to Webster with the specimens. Neither did they travel from Webster to Dallas, San Antonio, and El Paso to collect the specimens. A worker in Dallas, San Antonio, or El Paso collected the specimens and delivered them to the local airport. Someone from the Webster laboratory retrieved the batches from Houston's airport.

When a technician did drive to other laboratories to collect samples, he collected several at a time, sometimes from multiple locations. BestCare billed

these trips as though the samples were returned one-by-one to Webster when collected. Instead of prorating these trips as logic and the regulation require, it calculated the maximum number of miles a technician theoretically could have traveled to collect each specimen and return it to the laboratory.

The court has decided that the government could recover from BestCare on its theories of unjust enrichment and payment by mistake. On the government's motion, it now considers BestCare's responsibility under the False Claims Act.

2. *Medicare.*

Title 18 of the Social Security Act establishes, among other things, government-subsidized insurance for disabled and elderly Americans.[1] Under this Act, laboratories may bill the United States $1.00 per mile that their workers travel to collect specimens from patients.

The fee covers "the transportation and personnel expenses" for a worker to travel to the patient to collect the sample and return.[2] It is "based on the number of miles traveled and the personnel costs associated with collection."[3]

Axiomatically, to be eligible for a reimbursement, the laboratory must have paid an expense – the expense of a technician's travel to collect a sample. When BestCare had gathered the samples in El Paso to pack for shipping to Webster, the transportation for collection had been completed. Testing them 765 miles away was not required to collect them for the patients.

3. *Scheme.*

BestCare billed the United States $1.00 per mile for each specimen's trip from Dallas, San Antonio, and El Paso although its workers did not accompany the specimens. No personnel costs were associated with these trips, because the

---

[1] *See* 42 U.S.C. §1395, *et seq.*

[2] 42 U.S.C. §1395l(h)(3).

[3] *Id.*

specimen had already been collected. BestCare was paid, in other words, for travel expenses that its workers did not incur.

BestCare also billed for each specimen separately by calculating the maximum number of miles that its worker could have theoretically driven to retrieve them. In reality, the worker retrieved many specimens in a single trip. He did not return to the laboratory after each specimen was collected.

To simplify the facts about what BestCare's workers did with the specimens, the court has considered only bills for over 200 miles of one-way travel – the most egregious cases.

4. *False Claims Act.*

To be liable under the False Claims Act, Magareh and BestCare must have (a) made a false statement or engaged in fraudulent conduct; (b) with scienter; (c) that was material; and (d) that caused the government to pay.[4]

Magareh and BestCare falsely billed the government for miles not traveled by a technician. The false number of miles traveled was material, because it was used to calculate how much the government would pay BestCare. The government paid BestCare at least $10,190,545.00.

5. *Knowingly.*

To act knowingly, a person must (a) know that the claim is false; (b) act in deliberate ignorance of whether the claim is false; or (c) act in reckless disregard of whether the claim is false.[5]

BestCare and Magareh knew that no technician had traveled all the miles billed. Technicians had to keep a log of their actual travel mileage. When a staff member realized that tests that she thought were run in Webster were actually run in San Antonio and Dallas, she asked Magareh how to bill for the miles. He

---

[4] 31 U.S.C. §3729(a); *United States ex rel. Longhi v. Lithium Power Technologies, Inc.*, 575 F.3d 458, 467 (5th Cir. 2009).

[5] 31 U.S.C. §3729(b).

said to bill them as usual – as though the technicians traveled to Webster to run the tests.

A substantial portion of BestCare's revenue came from billing for miles the samples traveled without a technician.

- 37.9% of total revenue, 2006 to 2010
- 70.3% of Medicare revenue, 2005
- 83.2% of Medicare revenue, 2007

This alone should have aroused suspicion. Medicare was the main source of BestCare's revenue from 2004 to 2008, and most of what it paid BestCare was for miles.

Magareh signed or authorized the placement of his signature on every claim for travel reimbursement and the enrollment agreement with Medicare – by which BestCare agreed to bill honestly.

BestCare says that it hired clerks who independently administered its billing. It says that it was justified in relying on their professional guidance. They were neither independent nor professional. They were employees. All of their training came from Maghareh. After each clerk learned more about his scheme, if they questioned him about it, he fired them.

BestCare says that it cannot be held liable because the billing guidelines were ambiguous. BestCare insists that the rule does not say that the sample has to be conveyed by a person. It does, however, say that part of the reimbursement covers the technician's pay. BestCare has intentionally requested reimbursement for expenses it has neither incurred nor paid. Its principals banked on Medicare's poor management of the money and program. It worked for awhile – until a citizen complaint. When asked whether it was reasonable to bill the public $1,500 in travel expenses for a $43 blood test, Maghareh said, "I would assume it is reasonable because Medicare thought so too, and they paid us." No reasonable person could agree.

6. *Contractors.*

Although common sense, the statute, and its regulations prohibit BestCare's scheme, it insists that third-party contractors – hired by the United

States to administer Medicare – approved and paid them. That is true. That they erred does not excuse BestCare's dishonest predicate to their error.

BestCare says that it cannot be held liable because contractors knew what BestCare was doing but did not tell it to stop. The contractors audited its mileage submissions and did not say that they were inaccurate. They did not report a conclusion at all. No answer from the audit does not mean that the contractors condoned BestCare's practices. Also, the contractors did not have all the facts. They did not have the driving logs; they had only maps indicating the distance between the satellite laboratories and the main Webster laboratory.

The manuals that the contractors gave BestCare say that it may not bill for these expenses. The manuals explain that the travel allowance is intended to cover the "estimated travel cost and technician's salary associated with collecting the specimen." A 2007 addition to the manual says that laboratories cannot bill "for miles not actually traveled by the laboratory technician."

BestCare says that it talked to Medicare contractors who approved the practice. It offers notes of telephone conversations that simply record approval or a transfer to another. It did not seek a formal approval based on the facts of its practice. Those conversations cannot justify billing for expenses not incurred.

That BestCare continued to receive payments on its mileage claims does not indicate the government's approval. It relies on those submitting claims to do so accurately, and it pays them routinely.

7.   *Relator.*

BestCare says that Richard Drummond must be dismissed because its scheme was publicly disclosed.[6] It was not. Three Medicare contractors audited BestCare's billing for miles. None returned a conclusion. BestCare did not give the contractors its technician's travel logs – the data that would have been the most helpful. Even if the contractors had discerned BestCare's scheme, their

---

[6] 31 U.S.C. §3730(e)(4).

knowledge remained internal. They did not inform the public or publish the results in a public document.[7]

8.  *Conclusion.*

The scheme of BestCare Laboratory Services, LLC, was not publicly disclosed. Karim A. Magareh's and its motion for summary judgment will be denied.

The United States of America *ex relatione* Richard Drummond will take $30,571,635.00 from BestCare Laboratory Services, LLC, and Karim A. Maghareh.[8]

Signed on April 3, 2018, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge

---

[7] *See United States ex rel. Wilson v. Graham County Soil & Water Conservation Dist.*, 777 F.3d 691 (4th Cir. 2015).

[8] 31 U.S.C. §3729(a)(1).